IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Harry Pennington III and Timothy Lorentz, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>Fluor Corporation, Fluor Enterprises, Inc., Fluor Daniel Maintenance Services, Inc., SCANA Corporation, and South Carolina Electric & Gas Company,<br><br>　　　　　　Defendants. | Civil Action No.: 0:17-cv-02094-JMC<br><br><br>**ORDER AND OPINION** |

　　Plaintiffs Harry Pennington III and Timothy Lorentz (together "Plaintiffs") filed this putative class action against Fluor Corporation, Fluor Enterprises, Inc., Fluor Daniel Maintenance Services, Inc. ("Fluor Daniel"), SCANA Corporation ("SCANA") and South Carolina Electric & Gas Company ("SCE&G") (collectively "Defendants") alleging that the termination of their employment on July 31, 2017, was in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 (the "WARN Act").[1]  (ECF No. 41.)

　　This matter is before the court pursuant to a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure filed by Fluor Corporation, Fluor Enterprises, Inc., and Fluor Daniel (collectively "Fluor Defendants").  (ECF No. 110.)  In their Motion, Fluor Defendants primarily assert that they are entitled to judgment on the pleadings because "Plaintiffs' counsel made several judicial admissions during the motion hearing on February 14,

---

[1] Plaintiffs Lawrence Butler, Lakeisha Darwish, Darron Eigner Jr., Bernard A. Johnson, and Jimi Che Sutton (collectively the "Butler Plaintiffs") also filed WARN Act claims resulting from their terminations on July 31, 2017, against Fluor Corporation and Fluor Enterprises, Inc. in the related matter of *Butler v. Fluor Corp.*, C/A No. 0:17-cv-02201-JMC, ECF No. 1 (D.S.C. 2017).

1

2018, which demonstrate that the Fluor Defendants did not violate" the WARN Act. (*Id.* at 1.) Plaintiffs oppose Fluor Defendants' Motion in its entirety. (ECF No. 116.) For the reasons set forth below, the court **DENIES** Fluor Defendants' Motion for Judgment on the Pleadings.

## I. BACKGROUND RELEVANT TO THE INSTANT MOTION

This case arises out of the decision on July 31, 2017, to stop all construction at the V.C. Summer Nuclear Station ("VC Summer") in Jenkinsville, South Carolina. (ECF No. 41 at 2 ¶ 4.) As a result of that decision, Plaintiffs allege that approximately 5,000 employees were laid off who had been working and/or receiving assignments at VC Summer. (*Id.* at 5 ¶ 23.) Until their respective terminations, Plaintiffs further allege that Pennington worked directly for Fluor Daniel at VC Summer as a Heavy Equipment Operator and Lorenz was employed by Westinghouse Electric Company LLC ("WEC") as a Project Manager. (*Id.* at 4 ¶¶ 14, 15.) However, at the same time, Plaintiffs allege that they were employees of SCANA and SCE&G (together "SCANA Defendants") for purposes of the WARN Act. (*Id.* at 2 ¶¶ 1, 2.) To this point, Plaintiffs generally allege that SCANA Defendants were the single employer together with Fluor Defendants and/or WEC of all individuals working at VC Summer. (*Id.* ¶ 6; *see also id.* at 3 ¶ 7, 19 ¶ 103 & 22 ¶ 118.)

In their Amended Complaint, Plaintiffs allege that in 2008, SCANA Defendants entered into an agreement with WEC for the purpose of constructing "two AP-1000[2] nuclear reactors known as VC Summer 2 and 3." (ECF No. 41 at 6 ¶ 31.) Plaintiffs allege that as the general contractor "WEC was generally responsible for the design, manufacture, and procurement of the nuclear reactor, steam turbines, and generators." (*Id.* at 7 ¶ 34.) Plaintiffs further allege that in

---

[2] "The AP1000 is a nuclear power plant designed and sold by Westinghouse Electric Company, now majority owned by Toshiba." AP1000, https://en.wikipedia.org/wiki/AP1000 (last visited May 28, 2018). "The plant is a pressurized water reactor with improved use of passive nuclear safety." *Id.*

2

or around 2015, Fluor Corporation was brought in as a subcontractor to WEC to "provide staffing for craft (manual labor) employees and [] take primary responsibility for on-site construction" to include "responsibility for the craft, field engineers, and project controls personnel including the costs and scheduling of personnel." (*Id.* ¶¶ 37, 38.) At the same time, WEC "generally accepted liability for the cost overruns on the Summer Project, by agreeing to build it for a 'fixed-price' at SCANA [Defendants]' option," which option was exercised in May 2016 thus "capping [] costs for the Summer Project at close to $14 billion." (*Id.* ¶¶ 39, 40.)

Plaintiffs allege that "[i]n early 2017, WEC experienced cash shortfalls related to the Summer Project and a deepening liquidity crisis," which eventually led to WEC and its subsidiaries fil[][ing] [] voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the Southern District of New York" on March 29, 2017. (ECF No. 41 at 8 ¶¶ 44, 45.) Plaintiffs allege that as a result of WEC's bankruptcy "SCANA [Defendants] became financially accountable for the ongoing costs and plan of completion" for the VC Summer Project. (ECF No. 71 at 10.) Moreover, Plaintiffs assert that SCANA Defendants took over complete control of the VC Summer Project as demonstrated by the following post-bankruptcy conduct:

- "SCANA [Defendants] began paying Fluor's payroll directly to Fluor" (ECF No. 41 at 10 ¶ 57);
- SCANA Defendants "reassigned Fluor and WEC employees in a line of supervision interspersed with SCANA's own managers to whom Fluor and WEC employees would report at various levels" (*id.* at 11 ¶ 61);
- "SCANA [Defendants]'[] ground-level overseers attended all significant construction events, such as crane lifts and major concrete placements, and they attended the continual meetings across the site that took place throughout the day between Fluor and WEC and their respective crews dealing with the operational nuts-and-bolts of the constructions tasks" (*id.* ¶ 64);
- "SCANA [Defendants]'[] input into day-to-day operations became proactive, intrusive, and decisional, in keeping with its assumption of CEO-type control and leadership" (*id.* at 13 ¶ 72);

3

- "SCANA [Defendants'] field monitors, who had previously been silent, became vocal in directing Fluor/WEC personnel" (*id.* ¶ 73);

- "SCANA [Defendants] gave specific orders and directions concerning virtually all facets of the project, including construction, and safety - particularly concerning anything that would cause a delay or add cost" (*id.* ¶ 75);

- SCANA [Defendants] used their authority to "set the levels of craft personnel needed to perform assignments" or determine whether to hire highly skilled employees for specialized jobs (*id.* at 14 ¶¶ 76, 77, 80);

- SCANA [Defendants] controlled the work schedules of employees of WEC and Fluor to include whether they worked overtime, the number of overtime hours, their days off or days designated as holidays (*id.* at 15 ¶¶ 82–84); and

- SCANA [Defendants] provided the facilities, equipment, tools [heavy construction equipment] and materials necessary to complete the work (*id.* ¶¶ 85, 86).

Plaintiffs allege that after SCANA Defendants gained control of the VC Summer Project, they recognized by "at least March 2017, [that] mass layoffs and shutdowns were almost inevitable at the Summer Project in mid-summer." (ECF No. 41 at 17 ¶ 91.) Subsequently, on July 31, 2017, SCANA Defendants sent WARN Act correspondence to the Director of Business Services for the South Carolina Department of Employment and Workforce containing the following relevant information:

> This notice is provided in compliance with the Worker Adjustment Retraining and Notification Act and regulations promulgated thereunder.
>
> SCANA, the parent company of SCE&G, has decided to stop the construction of both Unit 2 and Unit 3 and file a petition for approval of abandonment with the Public Service Commission of South Carolina. Unfortunately, this process is expected to involve immediate, total, and permanent termination of the new nuclear construction project at VC Summer Nuclear Station, . . . . This complete termination of the construction project will affect 617 SCE&G employees and a currently unknown number of employees of affiliated companies that provide administrative support to the project.
>
> The separations are expected to begin on: September 30, 2017.

(ECF No. 9-4 at 2.)

Also on July 31, 2017, Plaintiffs allege that Fluor Defendants and WEC were told by SCE&G "to cease work on the project immediately" resulting in the immediate termination of

4

Plaintiffs' employment. (ECF No. 41 at 17 ¶¶ 95–96.) Additionally, Plaintiffs contend that "SCANA controlled the decision to terminate all the employees on the site without advance notice." (*Id.* ¶ 95.)

As a result of the foregoing, Pennington filed a putative class action Complaint in this court against Defendants Fluor Corporation, Fluor Enterprises, Inc. and SCANA on August 8, 2017, alleging violation of the WARN Act. (ECF No. 1.) In his Complaint, Pennington sought to represent "all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at, reported to, or received assignments from one of Defendants' Facilities and were terminated without cause on or about July 31, 2017, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about July 31, 2017, . . . ." (ECF No. 1 at 3–4 ¶ 16.) Pennington further alleged that Fluor Corporation, Fluor Enterprises, Inc. and SCANA knowingly failed to give their employees at least 60 days prior notice of termination of their employment as required by the WARN Act. (ECF No. 1 at 2 ¶ 3.) On October 25, 2017, Pennington filed an Amended Class Action Complaint, which provided additional WARN Act allegations and added Timothy Lorentz as Plaintiff and Fluor Daniel and SCE&G as Defendants. (ECF No. 41.) Fluor Defendants answered the Amended Complaint and asserted their affirmative defenses on November 20, 2017. (ECF No. 68.)

On December 4, 2017, SCANA Defendants filed a Motion to Dismiss. (ECF No. 69.) On February 14, 2018, the court heard argument from the parties on the Motion to Dismiss. (ECF No. 85.) During the February 14, 2018 motion hearing, Plaintiffs' counsel made the following statements:

- "Your Honor, on the morning of July 31st, 2017, SCANA ordered that all operations at its V.C. Summer project, nuclear reactor project, be halted. That

- order immediately and permanently did away with the positions of approximately 5,000 employees who were working at that site." (ECF No. 91 at 63:25–64:4.)

- "In other words, [][Plaintiffs'] position was shut down by SCANA and their employment immediately was terminated by their direct employers." (*Id.* at 64:12–14.)

- "They [Plaintiffs] have alleged that – and it's been admitted today that SCANA had shut down a site and that they have experienced employment loss." (*Id.* at 65:9–11.)

- "However, I do think this is a striking decision-making circumstance. That [] not only [has] SCANA made the decision, but it has directed the alleged illegal activity giving rise to this litigation. It directs the shutdown to others." (*Id.* at 74:22–75:1.)

- "So you are essentially saying by that rule the plaintiffs' direct employers could not have given the 60-day warning if SCANA didn't give their 60-day warning as well  - - [Plaintiffs' counsel:] Of course." (*Id.* at 66:11–19.)

- "Westinghouse and Fluor had no notion on the day before - - the 60 days before that there was a shutdown that was being prepared or planned by SCANA, and SCANA needed only have let people know that it was making this plan 60 days earlier and of course Westinghouse and Fluor would have been - - had the option to give notices as well. If SCANA had just given notice or filed a notice 60 days earlier, then Westinghouse and Fluor could have used whatever independence they might have had to act and exercise their independence and decide to give a WARN notice or not themselves." (ECF No. 91 at 66:19–67:3.)

- "Absolutely. You know, Your Honor, you sort of hit on it, which was by withholding notice until the last day, how much independence did SCANA allow its independent contractors to give WARN notice?" (*Id.* at 72:13–16.)

- Because essentially it's made - - under your argument, again understanding - - trying to understand your argument, it has essentially made Fluor a defendant - - [Plaintiffs' counsel]: Absolutely, exactly right. THE COURT: -- because it didn't have the opportunity to exercise . . . [Plaintiffs' counsel]: That's right, and unfortunately or not, the direct employer is always going to be the one who presses the button - -. (*Id.* at 75:12–20.)

- "- - of the nature of the relationship, but the action of why WARN exists about the notice and all of that, you're suggesting that Fluor didn't have the opportunity to relieve itself of the specific allegations of WARN. [Plaintiffs' counsel]: That's how we understand the circumstances and how we framed the complaint." (*Id.* at 76:7–12.)

Thereafter, on May 30, 2018, Fluor Defendants filed the instant Motion for Judgment on the Pleadings. (ECF No. 110.) On June 13, 2018, Plaintiffs filed a Response in Opposition to Fluor's Motion for Judgment on the Pleadings (ECF No. 116), to which Fluor Defendants filed a

6

Reply in Support of the Motion for Judgment on the Pleadings (ECF No. 118) on June 20, 2018.

## II. JURISDICTION

This court has jurisdiction over Plaintiffs' WARN Act cause of action via 28 U.S.C. § 1331, as it arises under a law of the United States, and also via 29 U.S.C. § 2104(a)(5), which empowers district courts to hear claims alleging violations of the WARN Act.

## III. LEGAL STANDARD

A.  <u>Motions for Judgment on the Pleadings Pursuant to Rule 12(b)(c)</u>

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."[3] *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)); *see also Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011)

---

[3] A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

(citations omitted).

A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Cont'l Cleaning Serv. v. UPS*, No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (citing *Herbert Abstract v. Touchstone Props., Inc.*, 914 F.2d 74, 76 (5th Cir. 1990)). "An issue of fact is deemed to be material if the outcome of the case might be altered by the resolution of the issue one way rather than another." *Walker v. Liberty Mut. Ins. Co.*, C/A No. No.: 4:16-cv-01388-RBH, 2017 WL 1020884, at *1 (D.S.C. Mar. 16, 2017) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed. 2011)). "Thus, the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* "Accordingly, '[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false.'" *Catlin Specialty Ins. Grp. v. Lowcountry Oysters of Murrells Inlet, LLC*, C/A No. No. 2:17-1528-RMG, 2018 WL 369154, at *1 (D.S.C. Jan. 11, 2018) (quoting *Lewis v. Excel Mech.*, LLC, No. 2:13-CV-281-PMD, 2013 WL 4585873, at *1 (D.S.C. Aug. 28, 2013)). "[W]hen the plaintiff moves for judgment on the pleadings, the motion should be granted if, 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Walker*, 2017 WL 1020884, at *1 (quoting *Lowden v. Cty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010)).

B.  <u>The WARN Act Generally</u>

The Court of Appeals for the Fourth Circuit has described the WARN Act as follows:

> The WARN Act was enacted in 1988 to provide notice of sudden, significant employment loss so that workers could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff. *Bader v. N. Line Layers, Inc.*, 503 F.3d 813 (9th Cir. 2007); 20 C.F.R. § 639.1(a). The Act requires certain employers to provide affected employees with sixty-days notice of a plant closing or "mass layoff." 29 U.S.C. § 2102(a). An employer who fails to provide this notice is liable to each affected employee for backpay, benefits, and attorney's fees. 29 U.S.C. § 2104(a). The statute defines "mass layoff" as a reduction in work force at a "single site of employment" that affects at least thirty-three percent of the employees and a minimum of fifty employees in a thirty-day period. 29 U.S.C. § 2101(a)(3). . . .The WARN Act itself does not define "single site of employment." However, the Secretary of Labor, pursuant to her authority, has promulgated interpretive regulations. 29 U.S.C. § 2107. These regulations are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984).

*Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007).

## IV. ANALYSIS

A. <u>The Parties' Arguments</u>

*1. Fluor Defendants*

In their Motion, Fluor Defendants first argue that they are entitled to judgment on the pleadings based on Plaintiffs' counsel's statements at the February 14, 2018 motion hearing. (*See supra* at 6; *see also* ECF No. 110 at 3–4.) More specifically, they argue that Plaintiffs' counsel's statements are party admissions proving that "Fluor Defendants did not order the plant closing [which] relieves [] Fluor Defendants from liability under the WARN Act." (ECF No. 110 at 7.) In support of their argument, Fluor Defendants point out that the WARN Act "imposes liability only on an employer who orders the closing of a plant." (*Id.* at 8 (quoting *Administaff Cos., Inc. v. N.Y. Jt. Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 456 (5th Cir. 2003)).) In this regard, Fluor Defendants assert that they "did not make the decision to shut down the V.C. Summer project, and were not aware of SCANA's decision to do so until July 31, 2017, when SCANA announced its decision." (*Id.*) Therefore, Fluor Defendants urge the court

9

to dismiss them from the action because "they did not order the plant closing, which is required for a finding of liability under the WARN Act." (*Id.*)

Secondly, Fluor Defendants argue that they should be dismissed from the action because Plaintiffs' counsel's admissions also support the applicability of the "unforeseeable business circumstances" (the "UBC") exception. (*See generally* ECF No. 110 at 9–13.) Fluor Defendants assert that Plaintiffs' counsel's admissions demonstrate that "SCANA's sudden and unexpected shutdown of the V.C. Summer project left the Fluor Defendants with 'zero independence' to provide WARN notices." (*Id.* at 11.) As a result, "Fluor Defendants are relieved of their responsibility to provide WARN notices or to otherwise pay employees for 60 days following notice." (*Id.* (citing, *e.g., Watson v. Mich. Indus. Holdings, Inc.*, 311 F.3d 760, 766 (6th Cir. 2002) (holding employer was "excused from the WARN Act's notice requirement under the unforeseeable business circumstances exception" where customer decided to stop doing business with employer without prior notice)).)

   2. *Plaintiffs*

Plaintiffs oppose Fluor Defendants' Motion for Judgment on the Pleadings arguing that the statements of Plaintiffs' counsel at the February 14, 2018 motion hearing were "not stipulations averring that Fluor did not order a 'plant closing,'" but "are simply inferences Fluor draws from words that do not state the conclusions Fluor wants." (ECF No. 116 at 6, 10.) Plaintiffs further argue that "[a]ll Fluor can do is ask the Court to draw an inference in its favor, *i.e.*, that Fluor did not order a 'plant closing' because counsel said SCANA did." (*Id.* at 10.) However, Plaintiffs assert that the court is not allowed to draw this inference because it "must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." (*Id.* (quoting *Doosan*

10

*Mach. Tools Am. Corp. v. Mach. Sols., Inc.*, No. 3:17-CV-00876-JMC, 2018 WL 1374066, at *3 (D.S.C. Mar. 19, 2018)).) In this regard, Plaintiffs assert that the Amended Complaint alleges that SCANA and Fluor Defendants were a single employer enterprise thereby making any distinction regarding who gave the plant closure order irrelevant. (*Id.* at 8.)

Plaintiffs next oppose Fluor Defendants' application of the UBC exception asserting that a necessary prerequisite to the exception has not been shown, *i.e.*, that Fluor Defendants "delivered a timely WARN notice with the requisite content." (*Id.* at 11 (citing 29 U.S.C. § 2102(b)(3) ("An employer relying on this subsection shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.")).)

*3. Fluor Defendants in Reply*

In their Reply brief, Fluor Defendants reiterate that their Motion should be granted because they neither ordered the plant's closing nor "were required to provide 'after the fact notice' of the plant closing to avail themselves of the unforeseeable business circumstances defense." (ECF No. 118 at 7–9.)

B. <u>The Court's Review</u>

In their Motion, Fluor Defendants seek judgment on the pleadings based on alleged admissions of Plaintiffs' counsel and the applicability of the UBC exception.

*1. Counsel's Statements as Admissions*

Fluor Defendants contend that they are entitled to judgment on the pleadings because "Plaintiffs' counsel made several judicial admissions during the motion hearing on February 14, 2018 [*see* supra at 6], which demonstrate that the Fluor Defendants did not violate" the WARN Act. (ECF No. 110 at 1.)

"A judicial admission is a formal, deliberate declaration which a party or his attorney

11

makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986) (citing 9 J. Wigmore, *Evidence* § 2588 n.1 (Chadbourne rev. 1981)). A judicial admission "is conclusive in the case." *Everett v. Pitt Cty. Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015) (quoting *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004)). "Judicial admissions 'go to matters of fact which, otherwise, would require evidentiary proof.'" *Id.* (quoting *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963)). "In addition, judicial admissions 'include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law.'" *Id.* (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (internal quotation marks omitted)). "[A] lawyer's statements may constitute a binding [judicial] admission of a party[]" if the statements are "deliberate, clear, and unambiguous[.]" *Minter*, 762 F.3d at 347 (quoting *Fraternal Order of Police Lodge No. 89 v. Prince George's Cty., Md.*, 608 F.3d 183, 190 (4th Cir. 2010)).

Upon conducting a plain reading of Plaintiffs' counsel's statements from the February 14, 2018 motion hearing, the court is not persuaded that they are "deliberate, clear, and unambiguous admissions" by Plaintiffs' counsel that Fluor Defendants failed to order the shutdown of the VC Summer project. *Cf. Everett*, 788 F.3d at 141. As support, the court observes that several of the statements contain legal thoughts or theories (*see* ECF No. 91 at 75:12–76:12), which do not generally operate as judicial admissions. *Waller*, 323 F.2d at 24 ("The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the

12

court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them."). The court further observes that the statements factually referencing SCANA Defendants do not evince an intent to deliberately waive the right to present evidence regarding Fluor Defendants' alleged role in the VC Summer shutdown. *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975) ("Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact."). Moreover, the factual references to SCANA Defendants in Plaintiffs' counsel's statements also do not appear to contradict the allegations of the Amended Complaint wherein Plaintiffs allege that SCANA Defendants were the single employer together with Fluor Defendants and/or WEC of all individuals working at VC Summer. (*Compare* ECF No. 91 at 63:25–64:14 *with* ECF No. 41 at 2 ¶ 6; *see also id.* at 3 ¶ 7, 19 ¶ 103 & 22 ¶ 118.) In view of the preceding observations, the court finds that the above-cited statements of Plaintiffs' counsel do not constitute judicial admissions entitling Fluor Defendants to judgment on the pleadings.

   *2. Unforeseeable Business Circumstances*

Fluor Defendants also contend that they are entitled to judgment on the pleadings because the UBC exception applies to the shutdown of the VC Summer project.

The UBC exception is an affirmative defense that is applicable when a plant closes or mass layoff occurs "before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). To establish the UBC exception, an "employer must demonstrate (1) that the business circumstances that caused the layoff were not reasonably foreseeable and (2) that those circumstances were the cause of the layoff." *In re AE*

*Liquidation, Inc.*, 866 F.3d 515, 523 (3d Cir. 2017) (citing *Calloway v. Caraco Pharm. Labs., Ltd.*, 800 F.3d 244, 251 (6th Cir. 2015); 20 C.F.R. § 639.9(b)). However, "[e]ven if an employer establishes that unforeseeable events prevented it from giving notice sixty days in advance, the Act still requires that employers 'give as much notice as is practicable' under the circumstances, 29 U.S.C. § 2102(b)(3), including, where appropriate, 'notice after the fact,' 20 C.F.R. § 639.9." *In re AE Liquidation, Inc.*, 866 F.3d at 523.

Upon the court's review, Fluor Defendants have not met their burden of demonstrating the applicability of the UBC exception. First, the court does not perceive any support in the pleadings or documents incorporated in the pleadings for finding that Fluor Defendants provided statutorily compliant notice when they eventually did inform their employees that they were being terminated.[4] *See, e.g., Sides v. Macon Cty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) ("[I]t is manifest that a WARN Act employer attempting to circumvent the 60–day notice requirement must still give some notice in accord with 29 U.S.C. § 2102(b)(3)."). Second, the pleadings and their incorporated documents do not clearly identify the unforeseeable business circumstances that caused the shutdown of the VC Summer project.[5] Based on the foregoing, Fluor Defendants are not entitled to judgment on the pleadings based on the UBC exception.

## V. CONCLUSION

Upon careful consideration of the parties' pleadings and arguments, the court hereby **DENIES** the Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of

---

[4] Recognizing this requirement, Fluor Defendants observe that "the Court may allow limited discovery on the issue of whether the Fluor Defendants provided adequate 'after the fact notice' to employees affected by the plant closing." (ECF No. 118 at 10.)

[5] In fact, Plaintiffs allege that the events of the layoff were expressly foreseeable. (*See* ECF No. 41 at 2 ¶ 4, 18 ¶ 100, 19 ¶ 101 and 22 ¶ 121.)

Civil Procedure filed by Fluor Corporation, Fluor Enterprises, Inc., and Fluor Daniel Maintenance Services, Inc. (ECF No. 110.)

    **IT IS SO ORDERED.**

                                                              United States District Judge

July 13, 2018
Columbia, South Carolina