# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Harry Pennington III and Timothy Lorentz, on behalf of themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No.: 0:17-cv-02094-JMC<br>)<br>) |
| v. | ) **ORDER AND OPINION**<br>) |
| Fluor Corporation, Fluor Enterprises, Inc., Fluor Daniel Maintenance Services, Inc., SCANA Corporation, and South Carolina Electric & Gas Company, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the court pursuant to Plaintiffs Harry Pennington III and Timothy Lorentz's Motion for Class Certification, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") (ECF No. 21). Defendants Fluor Corporation, Fluor Enterprises, Inc., Fluor Daniel Maintenance Services, Inc. (collectively, "Fluor Defendants"), SCANA Corporation ("SCANA"), and South Carolina Electric & Gas Company ("SCE&G") (collectively, "SCANA Defendants") filed responses in opposition (ECF Nos. 37, 123, 124). For the reasons set forth below, the court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 21).

## I.   BACKGROUND RELEVANT TO THE INSTANT MOTION

This case arises out of the decision on July 31, 2017, to stop all construction at the V.C. Summer Nuclear Station ("VC Summer") in Jenkinsville, South Carolina. (ECF No. 41 at 2 ¶ 4.) As a result of that decision, Plaintiffs allege that approximately 5,000 employees were laid off who had been working and/or receiving assignments at VC Summer. (*Id.* at 5 ¶ 23.) Until their respective terminations, Plaintiffs further allege that Pennington worked directly for Fluor Daniel

1

at VC Summer as a Heavy Equipment Operator and Lorenz was employed by Westinghouse Electric Company LLC ("WEC") as a Project Manager. (*Id.* at 4 ¶¶ 14, 15.) However, at the same time, for purposes of the WARN Act, Plaintiffs allege that they were employees of SCANA Defendants. (*Id.* at 2 ¶¶ 1, 2.) To this point, Plaintiffs generally allege that SCANA Defendants were the single employer together with Fluor Defendants and/or WEC of all individuals working at VC Summer. (*Id.* ¶ 6; *see also id.* at 3 ¶ 7, 19 ¶ 103 & 22 ¶ 118.)

In their Amended Complaint, Plaintiffs allege that in 2008, SCANA Defendants entered into an agreement with WEC for the purpose of constructing "two AP-1000[1] nuclear reactors known as VC Summer 2 and 3." (ECF No. 41 at 6 ¶ 31.) Plaintiffs allege that as the general contractor "WEC was generally responsible for the design, manufacture, and procurement of the nuclear reactor, steam turbines, and generators." (*Id.* at 7 ¶ 34.) Plaintiffs further allege that in or around 2015, Fluor Corporation was brought in as a subcontractor to WEC to "provide staffing for craft (manual labor) employees and [] take primary responsibility for on-site construction" to include "responsibility for the craft, field engineers, and project controls personnel including the costs and scheduling of personnel." (*Id.* ¶¶ 37, 38.) At the same time, WEC "generally accepted liability for the cost overruns on the Summer Project, by agreeing to build it for a 'fixed-price' at SCANA [Defendants]' option," which option was exercised in May 2016 thus "capping [] costs for the Summer Project at close to $14 billion." (*Id.* ¶¶ 39, 40.)

Plaintiffs allege that "[i]n early 2017, WEC experienced cash shortfalls related to the Summer Project and a deepening liquidity crisis," which eventually led to WEC and its subsidiaries

---

[1] "The AP1000 is a nuclear power plant designed and sold by Westinghouse Electric Company, now majority owned by Toshiba." AP1000, https://en.wikipedia.org/wiki/AP1000 (last visited July 17, 2018). "The plant is a pressurized water reactor with improved use of passive nuclear safety." *Id.*

2

fil[][ing] [] voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the Southern District of New York" on March 29, 2017. (ECF No. 41 at 8 ¶¶ 44, 45.) Plaintiffs allege that as a result of WEC's bankruptcy "SCANA [Defendants] became financially accountable for the ongoing costs and plan of completion" for the VC Summer Project. (ECF No. 71 at 10.) Moreover, Plaintiffs assert that SCANA Defendants took over complete control of the VC Summer Project as demonstrated by the following post-bankruptcy conduct:

- "SCANA [Defendants] began paying Fluor's payroll directly to Fluor" (ECF No. 41 at 10 ¶ 57);
- SCANA Defendants "reassigned Fluor and WEC employees in a line of supervision interspersed with SCANA's own managers to whom Fluor and WEC employees would report at various levels" (*id.* at 11 ¶ 61);
- "SCANA [Defendants]'[] ground-level overseers attended all significant construction events, such as crane lifts and major concrete placements, and they attended the continual meetings across the site that took place throughout the day between Fluor and WEC and their respective crews dealing with the operational nuts-and-bolts of the constructions tasks" (*id.* ¶ 64);
- "SCANA [Defendants]'[] input into day-to-day operations became proactive, intrusive, and decisional, in keeping with its assumption of CEO-type control and leadership" (*id.* at 13 ¶ 72);
- "SCANA [Defendants'] field monitors, who had previously been silent, became vocal in directing Fluor/WEC personnel" (*id.* ¶ 73);
- "SCANA [Defendants] gave specific orders and directions concerning virtually all facets of the project, including construction, and safety - particularly concerning anything that would cause a delay or add cost" (*id.* ¶ 75);
- SCANA [Defendants] used their authority to "set the levels of craft personnel needed to perform assignments" or determine whether to hire highly skilled employees for specialized jobs (*id.* at 14 ¶¶ 76, 77, 80);
- SCANA [Defendants] controlled the work schedules of employees of WEC and Fluor to include whether they worked overtime, the number of overtime hours, their days off or days designated as holidays (*id.* at 15 ¶¶ 82–84); and
- SCANA [Defendants] provided the facilities, equipment, tools [heavy construction equipment] and materials necessary to complete the work (*id.* ¶¶ 85, 86).

Plaintiffs allege that after SCANA Defendants gained control of the VC Summer Project, they recognized by "at least March 2017, [that] mass layoffs and shutdowns were almost inevitable

3

at the Summer Project in mid-summer." (ECF No. 41 at 17 ¶ 91.) Subsequently, on July 31, 2017, SCANA Defendants sent WARN Act correspondence to the Director of Business Services for the South Carolina Department of Employment and Workforce containing the following relevant information:

> This notice is provided in compliance with the Worker Adjustment Retraining and Notification Act and regulations promulgated thereunder.
>
> SCANA, the parent company of SCE&G, has decided to stop the construction of both Unit 2 and Unit 3 and file a petition for approval of abandonment with the Public Service Commission of South Carolina. Unfortunately, this process is expected to involve immediate, total, and permanent termination of the new nuclear construction project at VC Summer Nuclear Station, . . . . This complete termination of the construction project will affect 617 SCE&G employees and a currently unknown number of employees of affiliated companies that provide administrative support to the project.
>
> The separations are expected to begin on: September 30, 2017.

(ECF No. 9-4 at 2.)

Also on July 31, 2017, Plaintiffs allege that Fluor Defendants and WEC were told by SCE&G "to cease work on the project immediately" resulting in the immediate termination of Plaintiffs' employment. (ECF No. 41 at 17 ¶¶ 95–96.) Additionally, Plaintiffs contend that "SCANA controlled the decision to terminate all the employees on the site without advance notice." (*Id.* ¶ 95.)

As a result of the foregoing, Pennington filed a putative class action Complaint in this court against Defendants Fluor Corporation, Fluor Enterprises, Inc. and SCANA on August 8, 2017, alleging violations of the WARN Act. (ECF No. 1.) In his Complaint, Pennington sought to represent "all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at, reported to, or received assignments from one of Defendants' Facilities and were terminated without cause on or about July 31, 2017, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass

4

layoffs and/or plant closings ordered by Defendants on or about July 31, 2017, . . . ." (ECF No. 1 at 3–4 ¶ 16.) Pennington further alleged that Fluor Corporation, Fluor Enterprises, Inc. and SCANA knowingly failed to give their employees at least 60 days prior notice of termination of their employment as required by the WARN Act. (ECF No. 1 at 2 ¶ 3.) On October 25, 2017, Pennington filed an Amended Class Action Complaint, which provided additional WARN Act allegations and added Timothy Lorentz as Plaintiff and Fluor Daniel and SCE&G as Defendants. (ECF No. 41.) On November 20, 2017, Fluor Defendants answered the Amended Complaint and asserted their affirmative defenses. (ECF No. 68.)

As it pertains to the present Motion, Plaintiffs filed a Motion for Class Certification and Supplemental Motions in Support of Class Certification, stating that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23. (ECF Nos. 21, 49, 82, 115.)[2]

SCANA Defendants filed responses in opposition, maintaining that (1) Plaintiffs have not satisfied their evidentiary burden of proof and (2) Plaintiffs have not met the requirements of Federal Rule of Civil Procedure 23. (ECF Nos. 37, 123.)[3] SCANA Defendants' main argument is that "Plaintiffs do not provide any evidence of the manner by which SCANA and/or SCE&G supposedly controlled or dictated the terms and conditions of Plaintiffs' work individually or any other specific individual on site who they seek to include in the purported class." (ECF No. 123 at 4-5.) SCANA Defendants' position remains that they never implemented an across-the-project plan or policy to control or direct the work of the individuals employed by Fluor Defendants or Westinghouse. (*Id*. at 13.) Accordingly, SCANA Defendants argue that at least two requirements of class certification – commonality and typicality – cannot be met until the court decides whether

---

[2] Lorentz was not yet a named plaintiff at the time ECF No. 21 (Motion to Certify Class) was filed.
[3] SCE&G was not a party to this matter at the time ECF No. 37 (Response in Opposition to Motion to Certify Class) was filed.

5

the SCANA Defendants are considered a single employer with Plaintiffs' respective immediate employers, Fluor Defendants and Westinghouse. (*Id*. at 7.) Therefore, SCANA Defendants assert that Plaintiffs cannot adequately represent the class because they were employed by different employers, working in different positions, and performing different tasks than the putative class members at the VC Summer Project. (*Id*. at 18.)

The Fluor Defendants filed a response in opposition to Plaintiffs' Motion, maintaining that (1) Plaintiffs' shifting class definition is inappropriate; (2) Plaintiffs cannot meet the commonality or typicality prongs of Rule 23; and (3) Plaintiffs' proposed notice is confusing and misleading. (ECF No. 124.) Similar to the SCANA Defendants, the Fluor Defendants contend that the single employer issue must be addressed prior to class certification. (*Id*. at 11.)

Plaintiffs filed a reply to the SCANA Defendants' Response, stating (1) class certification is appropriate because the predominant issues present in this case are class wide; and (2) the SCANA Defendants' focus on "ground-level operational activities" is irrelevant because the allegations in the Amended Complaint address many aspects of the SCANA Defendants' control over the VC Summer Project, none of which entail individualized control over each employee's job duties. (ECF No. 130.)

Plaintiffs also filed a reply to the Fluor Defendants' Response, averring that (1) the class lists are easily ascertained, and therefore no discovery is needed; and (2) adopting the Amended Complaint's class definition will avoid any concerns regarding the two groups in the class. (ECF No. 131.)

## II. JURISDICTION

This court has jurisdiction over Plaintiffs' WARN Act cause of action via 28 U.S.C. § 1331, as it arises under a law of the United States, and also via 29 U.S.C. § 2104(a)(5), which empowers district courts to hear claims alleging violations of the WARN Act.

## III. LEGAL STANDARD

The United States Court of Appeals for the Fourth Circuit has held that a class cannot be certified if the class members are not identifiable or ascertainable, stating ". . . Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see also Solo v. Bausch & Lomb Inc.*, No. 2:06-CV-02716-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) ("[A]s a preliminary matter, the court must consider the definition of the class when determining the appropriateness of class certification.") (citing *Kirkman v. North Carolina R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)).

In addition to demonstrating ascertainability, the party seeking class certification bears the burden of demonstrating that it meets the requirements of Rule 23. *See, e.g., Romig v. Pella Corporation*, 2016 WL 3125472, at *3 (D.S.C. June 3, 2016). Rule 23(a) provides that certification is only proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Once these prerequisites are met, the proposed class must still satisfy one of three additional requirements for certification under Rule 23(b). *See EQT Prod. Co.*, 764 F.3d at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Plaintiffs seek

certification under Rule 23(b)(3); therefore, Plaintiffs must show that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." (emphasis added). "The predominance requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)).

A party must produce enough evidence to demonstrate that class certification is in fact warranted. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). If one of the requirements necessary for class certification is not met, Plaintiffs' efforts to certify a class must fail. *See Clark v. Experian Info. Sols. Inc.*, Nos. Civ.A.8:00-1217-24, Civ.A.8:00-1218-24, Civ.A.8:00-1219-24, 2001 WL 1946329, at *4 (D.S.C. March 19, 2001) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 205 (7th Cir. 1993)).

The court must go beyond the pleadings, taking a "close look" at relevant matters, conducting "a rigorous analysis of such matters," and making "findings" that the requirements of Rule 23 have been satisfied. *See Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365 (4th Cir. 2004) (citations omitted). While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits, *id.* at 366 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-78 (1974)), "sometimes it may be necessary for the district court to probe behind the pleadings before coming to rest on the certification question." *Id.* (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

## IV. ANALYSIS

### A. Federal Rule of Civil Procedure 23(a)

The Rule 23 requirements have been met. First, numerosity is satisfied because there are an estimated 5,000 putative class members who worked at the VC Summer Project who were terminated allegedly by all Defendants beginning on July 31, 2017 or thereafter as the reasonably foreseeable result of the mass layoffs or plant closings carried out on July 31, 2017 (ECF No. 1, ¶¶ 1, 101, 102). Plainly, such a large number makes joinder impracticable.

Second, commonality is satisfied because this factor of Rule 23(a) "requires the plaintiff to demonstrate that the putative class members "have suffered the same injury." *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 417 (E.D. Va. 2016). Plaintiffs' claims here are not different from the claims of the absent class members, nor will the defenses raised against Plaintiffs differ from those asserted against the group. Plaintiffs' proof of their own individual claims, and refutation of Defendants' assertion that they are not a single employer, will advance the claims of the putative class. Here, there are at least three common questions of fact and law. First, whether Defendants were subject to the requirements of the WARN Act. Second, whether the appropriate WARN notice was given. Third, whether Defendants are legally liable for the alleged WARN violation as a single employer.

Third, typicality, which is similar to commonality, is satisfied here because Plaintiffs and the putative class have an interest in prevailing in similar legal claims. *Nolan v. Reliant Equity Partners, LLC*, 08-cv-062, 2009 WL 2461008, at *3 (N.D. W.Va. Aug. 10, 2009). All class members, including Plaintiffs, must eventually establish that Defendants acted as a single employer in order to hold them liable for the WARN violation. The court disagrees with Defendants' contention that because the single employer issue has not yet been decided, the court

cannot certify the class at this time. The court is not bound by the class definition proposed in the Amended Complaint and can modify its language as the case progresses. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Fourth, adequacy of representation is satisfied here. Pennington has no conflicts of interest with the putative class and has vigorously pursued his claims. (*See* ECF No. 21-4.) Lorentz, the new proposed class representative, has also fairly and adequately represented the interests of the putative class members. (*See* ECF No. 115-3.) Lorentz has no conflicts of interest with the putative class and intends to continue to assist in prosecution of this case should he be appointed class representative. (*Id.*) The proposed class counsel has also vigorously pursued this action by continuing to stay involved in the developments in this case and the three other related WARN actions. (*See* ECF No. 115-1.) Therefore, Plaintiffs satisfy all of the requirements of Rule 23(a).

### B. Federal Rule of Civil Procedure 23(b)(3)

A class action is a superior method of adjudicating the WARN claims here. It is in the interest of judicial economy and efficiency to consolidate as many as 5,000 potential claims into a single action, which will allow the common questions of law and fact to be determined collectively, rather than by consideration in a haphazard and piecemeal fashion. Finally, class action litigation is superior to other methods of resolving the dispute because without certification, it would be economically unfeasible for individual plaintiffs to bring their cases independently. *See Quint v. Trident Mgmt., Inc.*, No. 1:14-CV-287, 2014 WL 4556944, at *1 (M.D.N.C. Aug. 20, 2014) (proposed WARN class satisfied Rule 23(b)(3) because "common questions of law predominate over individual questions and a class action is superior to other available methods for the fair and efficient adjudication of the matters in controversy.").

Accordingly, both prongs of Rule 23(b)(3) – predominance and superiority – are satisfied here.

As such, the court finds that class certification is appropriate.

Accordingly, it is hereby **ORDERED**:

A class (the "Class") is certified comprising:

Plaintiffs and all persons (i) who were former employees of Defendants and worked at, reported to, or received assignments from the V.C. Summer Nuclear Station (the "Facility"), located at Highway 215 & Bradham Blvd, Jenkinsville, South Carolina 29065, (ii) who were terminated without cause on or about July 31, 2017 or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about July 31, 2017, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the Class.

### V. CONCLUSION

Based on the foregoing, the court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 21).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 17, 2018
Columbia, South Carolina

11